IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TECHNO-LOGIC, LLC,                          )
                                            )
          Plaintiff/Counter-Defendant,      )
                                            )
     v.                                     )          CASE NO. 2:09-CV-329-WKW [WO]
                                            )
LOGICAL CHOICE TECHNOLOGIES,                )
     INC.,                                  )
                                            )
          Defendant/Counter-Plaintiff.      )

## MEMORANDUM OPINION AND ORDER

This civil action concerns claims and counterclaims between the two parties, all in relation to a contractual relationship between them. Defendant Logical Choice Technologies, Inc., was an authorized distributor for a line of computer-related equipment known as Promethean Products. Plaintiff Techno-Logic, LLC, entered into an agreement with Logical Choice establishing Techno-Logic as the authorized retailer for such products within a particular sales area. Disputes arose concerning this business relationship, and this lawsuit followed. Upon consideration of the briefing, law, and facts before the court, Defendant's motion for summary judgment is due to be granted, and Defendant's motion for default judgment is due to be denied as moot.

## I. JURISDICTION AND VENUE

The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of each.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists.  Fed. R. Civ. P 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial.""); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324.  What is material is determined by the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Lofton v. Sec'y of*

2

*the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). If the evidence on which the nonmoving party relies, however, "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (1986) (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment should be granted in favor of the defendant. *Celotex*, 477 U.S. at 323.

Thus, in cases where the evidence is admissible on its face or can be reduced to

3

admissible form and establishes there is no genuine issue of material fact, and where the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24.

### III.  BACKGROUND

While the claims and counterclaims in this suit are not especially complex in themselves, the procedural history of this litigation since its filing is a protracted one. Logical Choice timely answered Techno-Logic's Complaint, and included counterclaims in its answer.  (Doc. # 15.)  Techno-Logic failed to answer the counterclaims, and the Clerk entered default as to them.  (Doc. # 18.)  Techno-Logic moved to set aside the default, but the court denied that motion in an order accompanied by a brief opinion.  (Doc. # 23.) Logical Choice then moved for default judgment to be entered in its favor with respect to the counterclaims, but the court denied that motion without prejudice, because the claims and counterclaims appeared to be substantially intertwined, and it was unclear what effect granting a default judgment at that stage would have on Techno-Logic's own claims.  (Doc. # 28.)  The case then proceeded through the discovery process, until Logical Choice filed a motion for summary judgment with respect to both the claims and the counterclaims, accompanied by a renewed motion for default judgment with respect to the counterclaims. (Docs. # 36, 37.)  Techno-Logic responded to the motions, and they have now been fully briefed.  (Docs. # 42, 43, 46, 47.)

At the center of the case is a September 10, 2007 contract between the two parties. (Doc. # 15, Ex. 1.)  The contract provided for Techno-Logic to be the exclusive retailer

(except for certain "national resellers" who sold throughout the country) for Promethean brand products[1] within a designated geographical area consisting of nine counties in Alabama.  (Doc. # 15, Ex. 1, at 5.)  Logical Choice, an authorized distributor of Promethean products, would, in turn, be Techno-Logic's exclusive source for the products, and certain payment terms were set between the two parties.  (Doc. # 15, Ex. 1, at 2.)

Attached to the contract as "Exhibit B," dated "10/30/07," was an addendum designating the nine Alabama counties that were to be Techno-Logic's territory, and stating that the "Sales Quota through December 31st, 2007" was $250,000.  (Doc. # 15, Ex. 1, at 5.)

Techno-Logic's Complaint stated six counts against Logical Choice: for breach of contract, fraudulent inducement, fraudulent misrepresentation, intentional interference with performance of contract, intentional interference with contractual relations, and intentional interference with business relations.  (Doc. # 1.)  Logical Choice's counterclaims were for breach of contract by failing to pay invoices, breach of contract by failure to maintain "sales levels" Logical Choice alleged to have been contained in the September 2007 contract, as modified by the October 2007 addendum, and for interest, costs, and attorneys' fees.  (Doc. # 15.)  The parties do not dispute that Georgia law governs all the claims, under the terms of the contract.  (Doc. # 15, at 4.)

## IV.  DISCUSSION

### A.  Techno-Logic's Claims

---

[1] These are apparently certain education-related computer products, although the exact nature of the business is less than clear from the record.  *See* http://www.prometheanworld.com (last visited July 28, 2010).

### 1. *Breach of Contract*

Logical Choice argues that it is entitled to summary judgment with respect to all Techno-Logic's claims.  The first claim, for breach of contract, is based on the assertion that Logical Choice impermissibly altered the contract to consist of an "affiliate program," rather than the program originally contemplated by the contract.  (Doc. # 43, at 6.)  Techno-Logic concedes that, under Georgia law, an agreement with no definite term is terminable at will. (Doc. # 43, at 6.)  According to Techno-Logic, while such a termination would have been permissible, Logical Choice breached the contract by altering, rather than simply terminating it.  Techno-Logic's briefing is short on explanation of how such an alteration occurred. Techno-Logic submitted as evidence attached to its summary judgment briefing a September 19, 2008 letter from Logical Choice to Techno-Logic's sole partner, Olaf Lieb.  (Doc. # 45, Ex. A.)  The letter states that the existing contract would not be renewed as of its "anniversary date," and that instead, Techno-Logic was "encourage[d] . . . to participate in [a] new Referral Affiliate program detailed below."  (Doc. # 45, Ex. A, at 1.)

Techno-Logic nowhere explains how this letter effected a breach of contract; rather, it appears to have been a notice that Logical Choice, as was its right, had chosen not to renew the existing contract, accompanied by an invitation to continue the business relationship in a different form.  Additionally, as Logical Choice notes, this theory is itself at odds with the Techno-Logic's pleadings, which stated that the basis for the breach of contract claim was that Logical Choice unilaterally terminated the agreement.  (Doc. # 1, ¶ 24.)  Accordingly, the motion for summary judgment on the breach of contract claim is due to be granted.

### 2. *Fraud Claims*

Techno-Logic's two fraud claims appear to be largely derivative of the breach of contract claim.  In the first claim, Techno-Logic complains that it was fraudulently induced to enter the original contract, because Logical Choice intended only to gain Techno-Logic's contact list, then terminate the agreement so that it might have the use of the list when selling products for itself.  (Doc. # 43, at 7.)  Techno-Logic alleges that it "can show through oral testimony that this is not an isolated incident and that this scenario played out over other sales areas as well," although the exhibit it cites, an affidavit from Olaf Lieb, does not appear to have anything to do with what occurred in "other sales areas."  (Doc. # 43, at 7; Doc. # 45, Ex. B.)

The second fraud claim is difficult to distinguish from the first.  Essentially, Techno-Logic alleges that in the course of entering into the original contract, Logical Choice was aware that it was already too late to sell products to school systems for the 2007 school year, and planned to terminate the agreement with Techno-Logic just in time to reap greater profits from 2008 school year sales.  (Doc. # 43, at 8.)  Although the count is termed one for fraudulent misrepresentation, the court does not discern any actual misrepresentation alleged to have been made by Logical Choice; Techno Logic's theory is based on omissions rather than affirmative statements.

Although one would not know it from the parties' briefing, which is underpopulated with case law, a claim for fraud under Georgia law consists of five elements: "(1) a misrepresentation by the defendant, (2) intent to deceive, (3) intent to induce the plaintiff to

act or refrain from acting, (4) justifiable reliance on the misrepresentation, and (5) damage." *Johnson v. Univ. Health Servs., Inc.*, 161 F.3d 1334, 1341 (11th Cir. 2001) (citing *Smalls v. Blueprint Dev., Inc.*, 497 S.E.2d 54, 57 (Ga. Ct. App. 1998)).[2] Techno-Logic's claims do not cite any actual misrepresentations made by Logical Choice, and Techno-Logic has offered no evidence that would allow a jury to find that Logical Choice had any "intent to deceive." The evidence attached to Techno-Logic's briefing consists of an affidavit and letter setting forth Mr. Leib's own theories and complaints about Logical Choice's conduct, and a single e-mail from a Logical Choice representative making Techno-Logic a business proposition with respect to a particular school system.  (Doc. # 45, Exs. B, D, E.)  Given the absence of intent evidence or misrepresentations, there is likewise no evidence of the third and fourth elements.

Further, as Logical Choice notes, Techno-Logic concedes that the contract was terminable at will; these fraud claims appear to be little more than an attempt to avoid that result by casting an exercise of Logical Choice's bargained-for contract rights as fraudulent. The motion for summary judgment on these claims is due to be granted.

### 3.  Intentional Interference Claims

---

[2]  *Johnson* recited these elements in the context of a claim for "fraudulent inducement."  161 F.3d at 1341.  Neither *Johnson*, nor the state court case it relied upon, *Smalls*, alludes to there being variations in the elements of different types of fraud claims under Georgia law.  Nor have the parties pointed out any such variations.  Given that a claim for fraudulent *inducement* under Georgia law requires a "misrepresentation," the court has no difficulty in concluding that a claim for fraudulent *misrepresentation* would also require an actual misrepresentation.

The three remaining claims (for intentional interference "with performance of contract," "with contractual relations," and "with business relations") again arise from Logical Choice's alleged conduct in terminating the contract and pursuing a different business course afterwards.  Logical Choice argues that these claims all fail because they do not allege that Logical Choice interfered with contractual relations between Techno-Logic and a third party.  The court agrees that two of the claims, those for interference with performance of contract and contractual relations, fail for this reason, because those claims require, under Georgia law, intentional interference with a contract between the plaintiff and a third party.  *See Great Sw. Expo Co., Inc. v. Great Am. Ins. Co. of N.Y.*, 665 S.E. 2d 878, 880 (Ga. Ct. App. 2008); *Phillips v. MacDougald*, 464 S.E. 2d 390, 393 (Ga. Ct. App. 1995) (describing the cause of action as "[a]n intentional and non-privileged interference by a third party with existing contract rights and relations").  Techno-Logic does not allege the existence of any contract between itself and a third party with which Logical Choice could have interfered.

The claim for intentional interference with business relations is somewhat more plausible, because Techno-Logic does allege that Logical Choice's behavior resulted in Techno-Logic not procuring a contract with the Pike County Board of Education that it otherwise would have procured.  (Doc. # 43, at 10.)  This tort does not require a contract between the plaintiff and the third party, but only that a third party was induced not to enter into, or continue with, a business relationship with the plaintiff.  *Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 444 S.E. 2d 814, 817 (Ga. Ct. App. 1994).

9

Assuming this element has been met, Techno-Logic must confront the other elements of this tort. They include that a defendant "(1) acted improperly and without privilege [and] (2) acted purposely and with malice with the intent to injure." As with the fraud claim, Techno-Logic has offered no evidence from which a jury could find that Logical Choice's conduct met either of these two elements. Techno-Logic concedes that Logical Choice has the right to terminate the original contract; having done so, Logical Choice remained an authorized distributor of Promethean products, and did not act "improperly and without privilege" in selling them to willing buyers, or in offering other agreements to Techno Logic that Techno Logic found unfavorable. Nor is there any indication of how Logical Choice's sales were conducted "with malice with the intent to injure" Techno-Logic, rather than simply in the normal course of business.

Accordingly, Logical Choice's motion for summary judgment is due to be granted in full, and all Techno-Logic's claims will be dismissed with prejudice.

**B. Logical Choice's Counterclaims**

Logical Choice moves for both summary judgment and default judgment with respect to its three counterclaims.

*1. Breach of Contract – Failure to Pay Invoices*

This claim relates to Techno-Logic's alleged failure to pay for products delivered to it by Logical Choice. Techno-Logic essentially concedes its liability as to this counterclaim, raising concerns only over the amount requested. (Doc. # 42, at 12.) Techno-Logic offers no alternate calculation of the proper amount, and the court finds the evidence submitted by

10

Logical Choice in support of its damages are sufficient to enter judgment. Therefore, under both the summary judgment and the default judgment standards, Logical Choice's motion is due to be granted, and judgment will be entered in the amount of $54,367.55 requested in the briefing, to be recalculated to reflect appropriate interest at the time of judgment. (Doc. # 24, Ex. 2; Doc. # 36, Ex. 1, at 5.)

### 2. Breach of Contract – Failure to Maintain Sales Levels

This claim is based on the statement in the addendum to the original contract that there was a "Sales Quota through December 31st, 2007" in the amount of $250,000. According to Logical Choice, this indicates that a there as a general sales quota in the contract, and that it is entitled to damages in the amount of profits it would have made had Techno-Logic continued to sell its products for three additional years (2008-2010). (Doc. # 24, Ex. 2, at 3.) This amount is calculated by taking the amount of profits earned in 2007 in Techno-Logic's sales territory, and multiplying that number by three to obtain the amount of damages owed. (Doc. # 24, Ex. 2, at 3-4.) The only evidence offered in support of this calculation is an affidavit by a Logical Choice executive, Cynthia B. Kaye.

While the court is cognizant that, having defaulted, Techno-Logic has admitted all the allegations made by Logical Choice in its complaint, it remains somewhat skeptical as to the details of the "sales quota" claim. It is not clear how the unelaborated-upon two lines setting a "sales quota" for a three month period of 2007 could be read to impose an ongoing sales quota for the next three years. It seems odd for Logical Choice to assert, without explanation, that the contract would have lasted through 2010 had Techno-Logic not

11

breached it, given that elsewhere Logical Choice relies upon its own right to terminate the contract at any time, and there is no sign that this right does not belong to both parties – that is, that Techno Logic could also have terminated the contract at any time.  This may be explained, however, by Logical Choice's allegation that Techno-Logic, rather than terminating the contract, simply failed to make good-faith efforts to make a sufficient amount of sales in its designated territory while the contract was in force.  Techno-Logic having defaulted, this theory must be deemed to have been admitted, and the motion for default judgment is due to be granted as to liability – that is, as to the existence of *some* sales quota for *some* period of time.

While Techno-Logic's default has waived its right to a jury trial, the court will hold a hearing as to the amount of damages on this Counterclaim.  At the hearing, counsel should be prepared to discuss, and prove as necessary: (1) how to determine the amount of the "sales quota"; (2) a non-speculative basis for Logical Choice's claim to three years of damages; (3) why damages should not be offset by any profits Logical Choice actually earned from its own sales in the relevant region during the time in question, and; (4) evidence (beyond the existing unsupported affidavit from a Logical Choice employee) that would be sufficient, and not impermissibly speculative, to prove the amount of damages.

### 3. Costs, Fees, and Interest

Techno-Logic appears not to object to Logical Choice's claim for fees on the merits, but rather complains that they are un-itemized and speculative.  (Doc. # 42, at 5-6.)  Logical Choice concedes that a hearing is necessary to set the fee amount.  Accordingly, the motion

for default judgment with respect to liability on this Counterclaim is due to be granted, and a the amount of fees will be determined in the hearing that already must be conducted concerning the sales-quota Counterclaim.

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that Logical Choice's motion for summary judgment as to Techno-Logic's claims (Doc. # 37) is GRANTED.  All Techno-Logic's claims are DISMISSED with prejudice.  It is further ORDERED that Logical Choice's motion for default judgment, or in the alternative for summary judgment (Doc. # 36), is GRANTED in its entirety as to Counterclaim I, and with respect to liability as to Counterclaims II and III.  An on the record hearing is SET for **September 2, 2010**, at **10:00 a.m.**, in courtroom 2E of the Frank M. Johnson, Jr. U. S. Courthouse, One Church Street, Montgomery, Alabama, to determine damages on Counterclaims II and III.

The parties may file simultaneous briefs concerning the proper calculation of damages as to the sales-quota counterclaim within fourteen days of this opinion.  Also within fourteen days of this opinion, Logical Choice shall file, *in camera*, records sufficient to support its claims for fees and costs.

DONE this 30th day of July, 2010.


_____ /s/ W.  Keith Watkins _____
UNITED STATES DISTRICT JUDGE