IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TECHNO-LOGIC, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:09-CV-329-WKW [WO] |
| | ) | |
| LOGICAL CHOICE TECHNOLOGIES, INC., | ) ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

The court previously granted default judgment or, in the alternative, summary judgment, in favor of Counter-Plaintiff Logical Choice Technologies, Inc. ("Logical Choice") on Counterclaims II and III with respect to liability. (Doc. # 54, at 13.) On March 18, 2011, the court held an evidentiary hearing to determine the amount of damages owed by Counter-Defendant Techno-Logic, LLC ("Techno-Logic") to Logical Choice on these Counterclaims. At issue are the amount of damages Techno-Logic's breach of contract caused Logical Choice in lost anticipated profits (Counterclaim II) (Doc. # 54, at 11-22; Doc. # 59, at 5), and costs and attorney's fees (Counterclaim III). (Doc. # 54, at 12-13; Doc. # 59, at 7.) For the reasons that follow, Logical Choice is due $24,015.50 in attorney's fees on Counterclaim III, and $0.00 in lost profits on Counterclaim II.

**I. DISCUSSION**

**A.**     **Attorney's Fees in Counterclaim III**

At the hearing, Techno-Logic did not object to David Lilenfeld's affidavit (Doc. # 62)

detailing the attorney's fees incurred by Logical Choice in this case. The court then pronounced judgment for Logical Choice on Counterclaim III for the amount of the attorney's fees detailed in the affidavit, plus costs. Thus, Logical Choice is due $24,015.50 in attorney's fees,[1] and costs.

**B.     Anticipated Profits in Counterclaim II**

Because Logical Choice did not seek damages on Counterclaim II for a sum certain, or for a sum that could be made certain by computation, Fed. R. Civ. P. 55(b)(1), the court conducted an evidentiary hearing to determine the amount of damages on Counterclaim II. (Doc. # 54, at 11-13); Fed. R. Civ. P. 55(b)(2)(B); *S.E.C. v. Smyth*, 420 F.3d 1225, 1231-32 (11th Cir. 2005). As pled in Counterclaim II, Logical Choice sought an unspecified award of damages for its future lost profits caused by Techno-Logic's breach of contract and Promethean's resulting termination of Logical Choice's right to sell Promethean's products in Techno-Logic's geographical area. (Logical Choice's Ans. ¶¶ 81, 82; *cf.* Doc. # 59, at 3-5.) For the reasons that follow, Logical Choice is due no damages for the anticipated profits claimed in Counterclaim II.

A defaulted defendant is deemed to "admit[] the plaintiff's well-pleaded allegations of fact . . . ." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The defendant, however, "is not held to admit facts that are not well-pleaded or

---

[1] Logical Choice's affidavit does not include a sum for the total amount of attorney's fees it seeks from Techno-Logic. The total was calculated by adding together each individual's billable hours and fees. [David Lilenfeld (62.2 hours x $275 per hour) + Scott Griffin (33.9 hours x $195 per hour) + Wendy Howard (2.4 hours x $125 per hour) = $24,015.50] (Doc. # 62, ¶¶ 5 - 7, 10-11.)

to admit conclusions of law." *Id.* "In short, . . . a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Id.* Thus, a defaulted defendant is "'entitled to contest the sufficiency of the complaint and its allegations to support the judgment.'" *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (quoting *Nishimatsu*, 515 F.2d at 1206). Moreover, pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Here, the parties do not dispute that Georgia law governs the claims. (Doc. # 54, at 5.) Generally, under Georgia law, "[d]amages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." O.C.G.A. § 13-6-2. "But remote and consequential damages, such as [a] claim of lost profits[,] . . . must be 'traced solely to the breach' and must be capable of 'exact computation.'" *Triad Drywall, LLC v. Bldg. Materials Wholesale, Inc.*, 686 S.E.2d 364, 365 (Ga. Ct. App. 2009) (quoting O.C.G.A. § 13-6-8).

> Ordinarily, anticipated profits are too speculative to be recovered, but where the business has been established, has made profits and there are definite, certain and reasonable data for their ascertainment, and such profits were in the contemplation of the parties at the time of the contract, they may be recovered even though they can[not] be computed with exact mathematical certainty. Nonetheless, to recover lost profits one must show the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery. Further, the losses must be directly traceable to the acts of the other party.

*Authentic Architectural Millworks, Inc. v. SCM Group USA, Inc.*, 586 S.E.2d 726, 731 (Ga. Ct. App. 2003) (internal citations and quotation marks omitted).

Logical Choice's Counterclaim II and the evidence produced at the damages hearing are legally insufficient for Logical Choice to recover damages for anticipated profits.[2] Logical Choice's claim for an award of anticipated profits fails because (1) the damages sought at the evidentiary hearing and in its brief are materially different than the admitted allegations in Counterclaim II; (2) Counterclaim II and the evidence do not show that the anticipated damages claimed were contemplated by the parties at the time of the contract; and (3) Counterclaim II and the evidence do not show that the anticipated profits are solely and directly traceable to Techno-Logic's beach of contract.

### *1.  Logical Choice Advanced a Theory and Requested an Amount of Damages Beyond Counterclaim II and the Award of Default Judgment on Liability.*

At the hearing, Logical Choice advanced a theory of causation and damages that was not pleaded in Counterclaim II and for which Logical Choice was not awarded default judgment on liability. The default judgment on Counterclaim II established only those well-pleaded allegations of fact found in Logical Choice's Counterclaim. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Based on Counterclaim II and the default judgment, Techno-Logic admitted Logical Choice's allegation that it breached the Reseller Agreement by failing to achieve an adequate level of sales. (Logical Choice Ans. ¶ 80; Doc. # 54, at 11-12.) Techno-

---

[2] In Counterclaim I, Logical Choice was awarded $54,367.55 for general breach of contract damages for Techno-Logic's breach of contract for failure to pay for products delivered by Logical Choice. (Doc. # 54, at 10-11.)

4

Logic also admitted that "as a result of these breaches by [Techno-Logic], Promethean terminated Logical Choice's right to sell Promethean products in the sales territory for which [Techno-Logic] had been responsible." (Logical Choice's Ans. ¶ 81.) Logical Choice then alleged the legal conclusion that "[Techno-Logic] is liable to Logical Choice for the revenue Logical Choice lost by losing the right to sell Promethean products in the territory which had been assigned to [Techno-Logic], in an amount to be shown at trial." (Logical Choice's Ans. ¶ 82; Doc. # 54, at 11-12.) The court agreed, and entered default judgment(Doc. # 54), in favor of Logical Choice as to liability on Counterclaim II for some amount of anticipated profits for some time for the lost sales of Promethean products in Techno-Logic's nine county sales territory. (Doc. # 54, at 11-12.) Thus, it was Logical Choice's burden to produce evidence at the evidentiary hearing to prove an ascertainable amount of damages for these anticipated profits.

A review of Logical Choice's argument and evidence from the evidentiary hearing shows that Logical Choice's anticipated profits claim has grown far beyond the scope pleaded in the Counterclaim or for which liability was awarded by the court. In its brief on damages and argument at the evidentiary hearing, Logical Choice did not merely seek some lost profits from Techno-Logic for its loss of the right to sell Promethean products in Techno-Logic's nine county territory for some period of time. (Doc. # 54, at 11-12.) Rather, Logical Choice sought $450,000 in anticipated profits from Logical Choice's loss of the right to sell Promethean products in the entire territory of southern Alabama for the years 2008-2010. (Ev. Hr'g; Doc. # 59, at 3-6.)

At the evidentiary hearing, Logical Choice called Jason M. Burg, director of legal services for Logical Choice, to testify to the amount of damages suffered by Logical Choice because of Techno-Logic's breach of its Reseller Agreement. (Ev. Hr'g; Doc. # 15, Ex. 1.) Mr. Burg testified that as a result of Techno-Logic's breach of the Reseller Agreement in its nine county sales territory, Promethean terminated Logical Choice's right to sell its products in all "40 to 50 counties" of the southern Alabama sales territory in late 2007 or early 2008.[3] (Ev. Hr'g.) Logical Choice was thereafter barred by Promethean from selling its products in all of the southern Alabama sales territory for 2008 to 2010. Logical Choice's theory of causation is that "had Techno-Logic met its sales quotas" in the Reseller Agreement, Logical Choice would have kept the right to sell Promethean products in all of the southern Alabama sales territory for the years 2008-2010. (Doc. # 59, at 4.) This theory was not pleaded in the Counterclaim and is unsupported by evidence.

To calculate the resulting damages that Logical Choice is owed for Techno-Logic's breach, Mr. Burg testified that Logical Choice earned about "$650,000 and change" in gross sales revenues in southern Alabama sales territory in 2007. This 2007 gross sales level yielded a profit of "about $150,000 and change" for Logical Choice based on its profit margin of twenty percent.[4] This profit margin calculation was based on Logical Choice's

---

[3] Logical Choice has not identified the 40 to 50 counties that it says make up the southern Alabama sales territory. References to the southern Alabama sales territory are to the 40 to 50 county region noted by Logical Choice. The court takes judicial notice of the fact that Alabama has 67 counties. *See* http://www.archives.alabama.gov/counties.html (last visited March 24, 2011).

[4] The court notes that twenty percent of $650,000 is $130,000, not $150,000, but that math is inconsequential to this Order.

"prerogative" to direct its profit margin on the sale of Promethean products. Therefore, Logical Choice claimed that it is due $150,000 per year for 2008-2010, for a total of $450,000 in anticipated profits. (Ev. Hr'g.) Because this scope of damages is entirely speculative, was not pled in Counterclaim II, and thus was not admitted by Techno-Logic, Logical Choice is due no damages for its anticipated profits in the sales territory of southern Alabama.

Further, Logical Choice produced no evidence by which to ascertain a value of anticipated profits lost by Logical Choice as a result of Techno-Logic's breach of contract in its nine county sales territory. Mr. Burg provided no testimony as to the amount of anticipated profits that Logical Choice had to forego in Techno-Logic's sales territory. (Ev. Hr'g.) In fact, Mr. Burg testified that he did not have any direct information on Techno-Logic's actual sales in its nine county territory during the pendency of the contract, other than Techno-Logic did not meet its $250,000 sales quota.[5] The court is at a loss on how to ascertain an amount of anticipated profits that relate to Techno-Logic's breach in its nine county territory.

### 2. *Logical Choice's Claimed Anticipated Profits Were Not Within the Contemplation of the Parties at the Time of the Contract.*

Logical Choice failed to produce evidence showing that the anticipated profits now sought in Counterclaim II were contemplated by the parties at the time of the contract. First,

---

[5] Mr. Burg also testified that he did not work for Logical Choice during 2007, or even during the discovery phase of this litigation, but nevertheless he did have personal knowledge of the facts based on a review of the documents in the case.

Logical Choice produced no evidence that when the parties signed the Reseller Agreement in 2007, they reasonably contemplated Logical Choice making sustained 2007 level profits for the entire sales territory of southern Alabama from 2008 to 2010. *Mizell v. Spires*, 246 S.E.2d 385, 387 (Ga. Ct. App. 1978) (Anticipated profits "reasonably must have been in the contemplation of the parties at the time of the contract."). Logical Choice provided no evidentiary basis to impute such clairvoyance to Techno-Logic. Second, the very terms of the contract show that such profits were not contemplated by the parties. The contract only included a three month sales quota for Techno-Logic; it only covered nine counties; and it was terminable at will.

### 3. *Logical Choice Has Not Proved the Direct and Sole Traceability of Its Claimed Anticipated Profits.*

Finally, Logical Choice produced no evidence that its lost profits were solely and directly traceable to Techno-Logic's breach of contract. Techno-Logic admitted that it breached the Reseller Agreement by failing to achieve an "adequate" level of sales.[6] (Logical Choice Ans. ¶ 80.) In defaulting, Techno-Logic did not admit that its breach was the sole and direct cause of Logical Choice's loss of anticipated profits for the entire southern Alabama sales territory. Logical Choice produced no evidence to that effect.

---

[6] It is interesting, though ultimately inconsequential, that Logical Choice's own witness testified that "the contract was not 'termed' due to under-performance. The contract was 'termed' due to [Techno-Logic's] inability to pay [its] bill." (Ev. Hr'g.) Logical Choice's witness also clarified that his use of 'termed' meant terminated.

Logical Choice's sole piece of evidence is that the parties entered into the Reseller Agreement in September 2007, calling for Logical Choice to meet its $250,000 sales quota in its nine county territory by December 31, 2007.[7] Sometime immediately thereafter in late 2007 or early 2008, Promethean terminated Logical Choice's sales rights for the southern Alabama sales territory for 2008 to 2010. Logical Choice did not show how one individual reseller's under-performance in roughly twenty to twenty-five percent of the southern Alabama sales territory over the span of one to seven months was the direct and sole cause of Promethean's decision to terminate Logical Choice's sales rights in all of southern Alabama. In fact, Mr. Burg testified that he did not know how much Techno-Logic's sales for the nine counties impacted Logical Choice's performance goals with Promethean. This was likely because Mr. Burg did not know what Techno-Logic's sales were for the nine counties during the pendency of the Reseller Agreement.

Nor did Logical Choice produce evidence of Promethean's motivation for terminating Logical Choice's sales rights in southern Alabama, other than to claim that Techno-Logic caused it. Logical Choice failed to prove that its anticipated profits are solely and directly traceable to Techno-Logic's breach, and thus they are not recoverable.

For the foregoing reasons, Logical Choice failed to allege facts or produce evidence sufficient to prove an ascertainable award of anticipated profits under Georgia law. Logical Choice did not ask for nominal damages in the Counterclaim or at the evidentiary hearing.

---

[7] Exhibit B of the Reseller Agreement attached to Logical Choice's Answer said the quota was for December 31, 2007, and Mr. Burg did not have personal knowledge otherwise. (Ev. Hr'g.)

9

Where a party has failed to prove an ascertainable amount of damages for a breach of contract, its recovery is restricted to nominal damages. *Crawford & Assocs., Inc., v. Groves-Keen, Inc.*, 194 S.E.2d 499, 501-02 (Ga. Ct. App. 1972); O.C.G.A. § 13-6-6. Because Logical Choice recovered an ascertainable amount of general damages for Techno-Logic's breach of the Reseller Agreement in Counterclaim I, the court declines to award it nominal damages on Counterclaim II.

## II. CONCLUSION

Accordingly, it is ORDERED that Logical Choice's Motion for Default Judgment (Doc. # 24) with respect to damages is DENIED as to Counterclaim II for anticipated profits, and GRANTED as to Counterclaim III for attorney's fees in the amount of $24,015.50, and costs. A separate judgment will be issued.

DONE this 18th day of April, 2011.

                                                /s/ W. Keith Watkins  
                                      UNITED STATES DISTRICT JUDGE